## UNITED STATES

v.

**Roscoe D. WEBB, 151 44 1008, Sergeant (E–5), U. S. Marine Corps.**

### NCM 77 1209.

U. S. Navy Court of Military Review.

Sentence Adjudged 5 April 1977.

Decided 11 Nov. 1977.

614

LT Michael E. Blount, JAGC, USNR, Appellate Defense Counsel.

CAPT Geoffrey D. Fallon, USMCR, Appellate Government Counsel.

Before NEWTON, Senior Judge, and GLADIS and GRANGER, JJ.

GLADIS, Judge:

Appellant was convicted at a special court-martial bench trial of wrongful possession of 341 grams of marijuana and sentenced to a bad conduct discharge and reduction to pay grade E–1. Prior reviewing authorities have approved the findings and sentence.

Appellant contends that his conviction stems from an illegal search and that the sentence is unduly harsh. We disagree and affirm.

*Admissibility of Marijuana*

Appellant's company commander received information from PFC B that PVT C told B that he had seen a kilo of marijuana earlier that morning in a wall locker in the NCO quarters in squadbay 3 of the Service Company barracks.[1] C asked B to help him steal the marijuana. The company com-

1. The evidence is conflicting as to whether B stated that C had said the marijuana was in the NCO quarters. We find that B so stated.

mander considered B, a member of his company who had provided reliable information in the past, to be reliable. He was aware of C's reputation as a thief and believed B's report. After advising the battalion adjutant, the company commander requested CID assistance and a dog. A trained and experienced narcotics detector dog with an excellent performance record and his handler came to the barracks and, after meeting with the company commander and first sergeant, went through the squadbay in the NCO quarters. The handler escorted the dog on a leash through each cubicle, past the wall lockers. The dog gave a strong alert at appellant's wall locker. They proceeded through the remaining cubicles. Appellant was summoned, informed that the dog had alerted on his locker, advised of his *Miranda-Tempia* [2] rights, and asked if he would consent to a search of his locker. He agreed and 16 bags of marijuana were discovered.

■ Assuming without deciding that the information presented to the company commander was insufficient to establish probable cause to search, it was sufficient to warrant further investigation, including an investigation utilizing narcotics detector dogs in common barracks areas.[3] *See United States v. Unrue*, 22 U.S.C.M.A. 466, 47 C.M.R. 556 (1973); *cf. United States v. Roberts*, 25 U.S.C.M.A. 39, 54 C.M.R. 39, 2 M.J. 31 (1976). Not until the Government agents intruded into property to which the accused possessed a reasonable expectation of privacy could there be any question as to their authority or as to the legal consequence of what they did. *United States v. Thomas*, 24 U.S.C.M.A. 228, 231, 51 C.M.R. 607, 610, 1 M.J. 397, 400 (1976).

■ First, appellant argues that the marijuana introduced into evidence was the fruit of an illegal search because he had a reasonable expectation of privacy in his cubicle. The NCO quarters which consisted of a portion of a squadbay and provided berthing for about 30 men was divided into two or four-man cubicles by lockers placed perpendicular to the walls and an open passageway running the length of the quarters. These open cubicles were not separated from the passageway by any barriers. Partitions or draperies were not permitted. This case is distinguishable from *Roberts* which involved entry into closed rooms where the occupants had a reasonable expectation of privacy.[4] The cubicles were not private spaces. Cleaning parties moved through them freely. The company commander and the first sergeant went through them regularly on security checks to ascertain that the wall lockers were locked. A noncommissioned officer berthed in a cubicle did not have the right to exclude another noncommissioned officer berthed in another cubicle from the first's cubicle.[5] In practice, enlisted men who were not noncommissioned officers were not excluded from the cubicles and were commonly found there. Under the circumstances, we conclude that appellant did not have a reasonable expectation of privacy in the cubicle in question. The action of the Government's agents in escorting a narcotics detector dog into it was neither unreasonable nor an impermissible intrusion.

---

2. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *United States v. Tempia*, 16 U.S.C.M.A. 629, 37 C.M.R. 249 (1967).

3. The search of all the living quarters in a barracks, even though it involves entry into areas where there is an expectation of privacy, is reasonable if based upon probable cause. *United States v. Fontenette*, 3 M.J. 566 (A.C.M.R.1977). In the case at bar, the company commander believed that he did not have probable cause to authorize a search on the basis of the information presented because the person possessing the marijuana and its exact location were not specified.

4. In *United States v. Thomas, supra,* entry into cubicles zoned off by furniture was involved. The issue of whether the accused had a reasonable expectation of privacy was not litigated and the facts were not developed.

5. There is some conflict in the evidence with respect to the right of an individual, both as a matter of policy and in practice, to exclude others from the cubicle in which he was berthed. We have resolved the conflict, utilizing our fact finding powers. *See* Article 66, 10 U.S.C. § 866, UCMJ.

Second, appellant argues that he did not freely consent when he authorized the search of his locker. When consent to search is asserted it must be shown by clear and positive testimony. The burden of proof is upon the Government. Mere submission to the color of authority of law enforcement officers, or acquiescence in the officers' announced or indicated purpose to search, is not consent. Each case must be decided upon its own facts, with precedents being at best of doubtful value. *United States v. Justice*, 13 U.S.C.M.A. 31, 32 C.M.R. 31 (1962). Appellant was informed that the dog had alerted on his locker, advised of his *Miranda-Tempia* rights and asked if he would give his consent to search of his locker. The dog handler who asked him testified that appellant replied, "Well, go ahead. You're going to search it anyway." The handler then said, "Well, wait a minute, you don't have to give us consent." Appellant answered "Go ahead and search it." Appellant's version differs from that of the dog handler. The military judge's finding that appellant knowingly and voluntarily consented to the search of his locker is supported by clear and positive evidence. In view of the *Miranda-Tempia* warnings and advice that appellant did not have to consent, under the circumstances we find an informed and voluntary consent, not mere acquiescence or submission to authority. The marijuana seized from appellant's locker was properly admitted into evidence.

### Sentence

Appellant contends that the sentence is unduly harsh. On the basis of the entire record, we find that the sentence which includes an unsuspended bad conduct discharge is appropriate.

The findings of guilty and sentence as approved on review below are affirmed.

Senior Judge NEWTON and Judge GRANGER concur.